UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.: 4:16-cr-258 CEJ (NAB) |
| | ) |
| ALDEN DICKERMAN, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS
AND INCORPORATED MEMORANDUM IN SUPPORT**

COMES NOW Defendant, Alden Dickerman, by and through counsel, aggrieved by an unlawful search and seizure made by the St. Louis County Police Department, and moves this Court to suppress any and all evidence and other items seized, test results concerning items seized, testimony or statements made about any of the foregoing, and any testimony regarding any observations made of Defendant's person while Defendant was under arrest or in custody that is intended to be used against him.

The grounds for Defendant's motion are as follows:

1.   That said articles which the Government intends to use against Defendant were obtained pursuant to unlawful searches and seizures by the St. Louis County Police Department.

2.   The searches were not conducted pursuant to warrants supported by probable cause, and they were not justified by valid consent or other lawful justification.

3.   The searches and seizures of Defendant's personal belongings, including but not limited to Defendant's Asus laptop (model AR5B95) and the hard drive contained therein, constituted illegal searches under the Fourth Amendment and violated Defendant's Constitutional privacy rights.

4. All contents, including but not limited to all pictures and videos, that were found by way of the unlawful search and seizure of Defendant's laptop and hard drive were the poisonous fruit of said unlawful search and seizure as well as other violations of Defendant's Constitutional rights.

5. Said search and seizure thus violated Defendant's rights under Article I, Sections 10, 15 and 18(a) of the Missouri Constitution, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

**MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS**

**I.      Statement of Facts**

Defendant is charged with a single violation of 18 U.S.C. § 2252A(a)(5)(B). On August 18, 2015, Detective Michael Slaughter ("Detective Slaughter") presented an application and affidavit for search warrant to search Defendant's residence for evidence of child pornography. *See* Exhibit A. In his affidavit, Detective Slaughter stated that he had received information from Special Investigator Wayne Becker ("SI Becker") related to child pornography. *Id.* at ¶ 4. Detective Slaughter stated that SI Becker had begun an undercover operation in September 2011 "collecting keys and files being shared on a '*Freenet*,' a publicly available peer to peer network, in order to build a data base [sic] of keys associated with known or suspected child pornography images and videos." *Id.* Additionally, "*Freenet* is a distributed, Internet based, peer-to-peer network which lets a user anonymously share files and chat on forums." *Id.* at ¶ 12. "Communications between computers running *Freenet*, or nodes, are encrypted and routed through other *Freenet* nodes making it difficult to determine who is requesting the information and what the content is of the information being requested." *Id.*

Additionally, SI Becker "began running copies of *Freenet* that had been modified for law enforcement to log the IP address, key, and date and time of requests that were sent to

2

these law enforcement *Freenet* nodes," and "[t]hese keys are then compared to keys of known child pornography." *Id.* at ¶ 5. Detective Slaughter then stated that SI Becker "observed IP address 172.12.235.62 routing and/or requesting suspected child pornography file blocks" and that "[t]he number and timing of the requests was **significant enough** to indicate that the IP address was the apparent original requester of the file." *Id.* at ¶ 6 (emphasis added). Detective Slaughter's affidavit further asserted that the IP address 172.12.235.62 was linked to the address of Defendant's residence. *Id.* at ¶¶ 9-10. The warrant to search Defendant's residence for evidence of child pornography was issued and executed on August 18, 2015. *See* Exhibit A. On August 21, 2015, SI Becker began reviewing contents from Defendant's Asus laptop and the hard drive stored therein. *Id.*

## II.     Principles of Law and Argument

Although reviewing courts give "great deference" to a magistrate's determination of probable cause, "[d]eference to the magistrate . . . is not boundless." *United States v. Leon*, 468 U.S. 897, 914 (1984). A reviewing court must first inquire "into the knowing or reckless falsity of the affidavit on which that determination was based." *Id.*, citing *Franks*, 438 U.S. 154. "Second, the courts must also insist that the magistrate purport to 'perform his neutral and detached function and not serve merely as a rubber stamp for the police.'" *Id.*, quoting *Aguilar v. Texas*, 378 U.S. 108, 111 (1964); *see also Illinois v. Gates*, 462 U.S. 213, 239 (1983). "Third, reviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Leon*, 468 U.S. at 915, quoting *Gates*, 462 U.S. at 239; *see also United States v. McArthur*, No. 4:07CR651-DJS, 2008 WL 481993, at *5 (E.D. Mo. Feb. 19, 2008), *aff'd*, 573 F.3d 608 (8th Cir. 2009).

> **A. The August 18, 2015 Search Warrant Was Issued as a Result of False and Misleading Statements and Omissions Pertaining to *Freenet* and Defendant's Laptop's IP Address' Connection Therewith, the Search Warrant Was Not Issued Upon Probable Cause and the Subsequent Search and Seizure Were Unlawful**

The general rule for challenging the veracity of a sworn statement used by police to procure a search warrant under the rule set forth in *Franks* provides the following:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). In the *Franks* context, "[t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* at 171. "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.* "They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." *Id.* "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.*

A *Franks* claim can also be based on omissions of fact, where a defendant succeeds in proving "first that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and, second, that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *United States v. Allen*, 297 F.3d 790, 795 (8th Cir. 2002), citing *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001). Here, Detective Slaughter's affidavit, relied upon for the issuance of the

4

August 18, 2015 search warrant, was inherently misleading and contained false statements, either knowingly and intentionally or with reckless disregard for the truth, as prohibited by *Franks*. In particular, Detective Slaughter's conclusory statement that "[t]he number and timing of the requests was significant enough to indicate that the IP address was the apparent original requester of the file" constitutes a bad faith misrepresentation of the findings apparent from SI Becker's undercover operation. Ex. A; *see* Ex. B, Aff. of Steve Dougherty. The number and timing of requests could have not been properly deemed significant enough to indicate that the IP address associated with Defendant's laptop was the apparent original requester of the file without taking additional steps to verify that the pattern observed was not the result of a bad connection close to the apparent requestor or other factors.

As noted in Mr. Dougherty's affidavit, there are a number of reasons that could account for the "number and timing of the requests" from this particular IP address without suggesting that this IP address originated the requests. Ex. B at ¶¶ 14-18. Law enforcement failed to appropriately rule out these other reasons before concluding that this IP address originated the requests. Worse, law enforcement represented to the magistrate that the only explanation for the number and timing of these requests originating from this IP address is that the IP address was initiating the requests for these file blocks that contained suspected child pornography.

Additionally, Detective Slaughter's affidavit omitted relevant discussion regarding the behavior of *Freenet*'s routing in estimating the probability that received requests originated from the peer they were received from (instead of forwarded from elsewhere) based in part on how many requests were received. Detective Slaughter's affidavit also omitted any discussion about the potential for false positives that might have resulted from SI Becker's undercover operation. Such omissions are inherently misleading because false positives are

5

likely to occur when investigating *Freenet* since it is, by nature, a complex and anonymous file sharing resource. *See* Ex. B, Aff. of Steve Dougherty.

The purpose of these false statements and omissions was to overstate and misrepresent the likelihood that Defendant's IP address had originally requested files containing child pornography to persuade the magistrate to issue the August 18, 2015 search warrant. Without the false statements and omissions, the affidavit could not have established probable cause, as the allegation that the number and timing of requests was "significant enough" was central and fundamental to the affidavit's conclusion as to the existence of probable cause. *Franks* holds that a Defendant is entitled to an evidentiary hearing if: (1) he makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit"; and (2) the allegedly false statement is necessary to the finding of probable cause. *Franks*, 438 U.S. at 155. Because the false statements here were necessary to the finding of probable cause, Defendant should be granted an evidentiary hearing under *Franks* and the evidence seized as a result of this search warrant should be suppressed.

      **B. The Judge Issuing the August 18, 2015 Search Warrant Lacked the Technological Expertise to Determine Probable Cause Based on the Contents of the Affidavit, and Abdicated His Role as a Neutral and Detached Magistrate**

In the search warrant context, the Supreme Court has held that "an issuing magistrate must meet two tests." *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972). "He must be neutral and detached, and he must be **capable of determining** whether probable cause exists for the requested arrest or search." *Id.* (emphasis added). "The primary reason for the warrant requirement is to interpose a 'neutral and detached magistrate' between the citizen and 'the officer engaged in the often competitive enterprise of ferreting out crime.'" *United States v. Karo*, 468 U.S. 705, 717 (1984), quoting *Johnson v. United States*, 333 U.S. 10, 14 (1948).

6

Although reviewing courts give "great deference" to a magistrate's determination of probable cause, "[d]eference to the magistrate . . . is not boundless." *United States v. Leon*, 468 U.S. 897, 914 (1984). Reviewing courts "must… insist that the magistrate purport to 'perform his neutral and detached function and not serve merely as a rubber stamp for the police.'" *Id.*, quoting *Aguilar v. Texas*, 378 U.S. 108, 111 (1964); *see also Illinois v. Gates*, 462 U.S. 213, 239 (1983). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

In reviewing a search warrant affidavit, the judge, not law enforcement, is the proper party to draw inferences and conclusions from the facts. "The essential protection of the warrant requirement of the Fourth Amendment . . . is in 'requiring that [the usual inferences which reasonable men draw from evidence] be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.'" *Gates*, 462 U.S. at 240, quoting *Johnson v. United States*, 333 U.S. 10, 13-14 (1948).

Here, due to the complexity and technical nature of the determination with which Judge Borbonus was tasked in this case and his apparent lack of training in topics related to *Freenet* and complex computer networking, he was not in a position to test the factual basis of the affidavit (which itself was fatally conclusory, as discussed in the following section) and the inferences made in the affidavit, and could not have fulfilled the neutral and detached role of a reviewing magistrate. Instead, his approval served as a rubber stamp for police that compromised the line between Defendant as a citizen and officers engaged in the competitive enterprise of ferreting out crime. As a result, Defendant's Constitutional rights were violated

7

by the issuance of the search warrant, and the evidence searched and seized during the execution of the search warrant should be suppressed.

### C. August 18, 2015 Search Warrant Affidavit Relied Substantially on Conclusory Statements and Failed to Give the Issuing Magistrate a Substantial Basis for His Determining of Probable Cause

Under *Leon*, "reviewing courts will not defer to a warrant based on an affidavit that does not 'provide the magistrate with a substantial basis for determining the existence of probable cause.'" *Leon*, 468 U.S. at 915, quoting *Gates*, 462 U.S. at 239; *see also United States v. McArthur*, No. 4:07CR651-DJS, 2008 WL 481993, at *5 (E.D. Mo. Feb. 19, 2008), aff'd, 573 F.3d 608 (8th Cir. 2009). "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Gates*, 462 U.S. at 239 (emphasis added); *see also United States v. Farlee*, 910 F. Supp. 2d 1174, 1184 (D.S.D. Dec. 7, 2012) ("The *Gates* Supreme Court decision guides the determination of when an affidavit is too conclusory to support issuance of a warrant."). "Conclusory statements made by affiants fail to give the issuing magistrate a substantial basis for determining that probable cause exists." *United States v. Summage*, 481 F.3d 1075, 1077-78 (8th Cir. 2007), citing *United States v. Caswell*, 436 F.3d 894, 897-98 (8th Cir. 2006). For one thing, "there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue" *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir.2000), citing *United States v. Koelling*, 992 F.2d 817, 823 (8th Cir. 1993). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also United States v. Wallace*, 550 F.3d 729, 732 (8th Cir. 2008). Reliance on conclusory statements in a law enforcement

8

affidavit violates the principle that the judge, not law enforcement, is the proper party to draw inferences and conclusions from the facts. *See Gates*, 462 U.S. at 240.

Here, the warrant affidavit failed to provide the magistrate with a substantial basis for determining the existence of probable cause, given the magistrate's position and apparent unfamiliarity with Freenet, the technical and complicated nature of the matters alleged in the affidavit, and the improperly conclusory nature of the statements connected with Freenet provided in the affidavit. Thus, the magistrate was unable to act in a properly neutral and detached manner, and instead served as a rubber stamp for police by approving the search warrant on the basis of conclusory statements and based on facts which the magistrate did not have the expertise required to understand, had they been provided to him.

In his affidavit, Detective Slaughter stated that SI Becker "observed IP address 172.12.235.62 routing and/or requesting suspected child pornography file blocks." Ex. A at ¶ 6. Detective Slaughter alleged that "[t]he number and timing of the requests was significant enough to indicate that the IP address was the apparent original requester of the file," but provided no factual support for this conclusion nor recitation of the facts relied upon to allow the magistrate—or anyone else—to test this inference of "significance" *Id.* (emphasis added). These statements were not only misleading and false (as discussed in Section II (A)), but were, moreover, entirely conclusory. The magistrate's apparent lack of sufficient technical expertise or experience with Freenet would have only compounded the problem inherent in the affidavits—that they fail to provide any usable information as to what facts, if any, drove law enforcement's conclusion of "significance" that would allow the judge to evaluate the validity of the conclusion. *See, e.g., Farlee*, 910 F. Supp. 2d at 1185 ("[T]here is nothing in the affidavits for the warrants from which the tribal judge could infer how the tribal police came to identify Farlee as that suspect, other than the terse and conclusory statement that the "investigation revealed." . . . The affidavits contained no information about what

9

investigation occurred to identify a suspect."). Because the magistrate's finding of probable cause necessarily relied on the affidavit's conclusory statements on the central issue upon which probable cause turned, suppression of the evidence seized in this case is required.

### III. Conclusion

WHEREFORE, Defendant Alden Dickerman respectfully requests this Court issue an order excluding all of the above-state evidence from trial, and for all other relief to which Defendant is entitled.

    Respectfully submitted,

    ROSENBLUM, SCHWARTZ, ROGERS & GLASS, PC

    By:    /S/ Adam D. Fein
          ADAM D. FEIN, #52255 MO
          Attorney for Defendant
          120 S. Central Avenue, Suite 130
          Clayton, Missouri 63105
          (314) 862-4332
          Facsimile (314)862-8050
          Email: afein@rsrglaw.com

### CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2016, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Ms. Colleen C. Lang, assistant United States attorney.