UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16-CR-0258 HEA |
| | ) | |
| ALDEN DICKERMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S RESPONSE TO THE DEFENDANT'S SENTENCING

## MEMORANDUM

Comes now the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Colleen Lang, Assistant United States Attorney for said District, and files its sentencing memorandum:

On April 16, 2018, the Defendant pled guilty to one count of Possession of Child Pornography.  The parties do not have an agreed upon sentencing recommendation and either party may ask for a sentence that is above or below the guideline range in this case.

The defendant filed a memorandum on August 27, 2018, requesting a sentence of thirty (30) to thirty-two (32) months in prison.  The Government believes that sentence is not appropriate and respectfully requests that the Court sentence the defendant to a sentence between sixty-three (63) and seventy-eight (78) months in prison, followed by lifetime supervised release. The government believes that a sentence between sixty-three (63) and seventy-eight (78) months

1

is appropriate in this case and is still a downward variance from the defendant's Total Offense

Level of twenty-nine (29).

**A.** **Response to Defendant's Argument regarding the United States Sentencing Commission's 2012 Report[1] ("the Report") and Section 2G2.2**

> **1.** **Section 2G2.2 Does Distinguish Between More and Less Serious Offenders in Its' Application of Specific Offense Characteristics.**

The defendant complains in his sentencing memorandum (Doc. #119) that too many of the

specific offense characteristics under Section 2G2.2 of the United States Sentencing Guidelines

apply to him, and other situations in his situation, and therefore, it must be flawed. The specific

offense characteristics under Section 2G2.2 do not apply in every case and these factors would

not have applied to the defendant if he would NOT have had:

- Images of child pornography that portrayed children under the age of twelve;

- Images of child pornography that portrayed sadistic and masochistic conduct;

- Over 600 images of child pornography.

The undersigned attorney for the government has seen and prosecuted cases where these above

listed characteristics did not apply[2]. The only specific offense characteristic that is always routinely

seen is the one involving the use of the computer because offenders no longer use the mail to

transport child pornography.  The government has taken that it into account when asking for a

---

[1] The Report can be found online at
http://www.ussc.gov/Legislative_and_Public_Affairs/Congressional_Testimony_and_Reports/Sex_Offen
se_Topics/201212_Federal_Child_Pornography_Offenses/index.cfm.
[2] See the following cases: *United States v. Silies*, 4:16CR0099JAR, in which the defendant only possessed approximately one hundred images of child pornography.  *United States vs. Johnny Wood*, 4:16CR0210 RWS and *United States vs. Rowe,* 4:15CR026 ERW, in which the defendants did not possess any images of sadistic and masochistic conduct. *United States vs. Tinsely, 4:15CR0319 RLW,* the defendant possessed less than 150 images and none of them portrayed sadistic and masochistic conduct.  *United States vs. Wulfmeier*, 4:15CR0127 SNLJ, the defendant did not possess images of any children under the age of twelve.

sentence between sixty-three (63) and seventy-eight (78) months in prison. The defendant is not among the least culpable of child pornography offenders.

2. **The Report's Recommendations to the Child Pornography Guideline Highlight, rather than Diminish, the Seriousness of the Defendant's Conduct.**

The Sentencing Commission has outlined some broad recommendations for revisions to the child pornography guidelines to better reflect the Commission's findings and the present state of the child pornography landscape. *Report,* p. 322.

The Commission proposed the following three categories of offender behavior as "the primary factors that should be considered in imposing sentences in § 2G2.2 cases:

  1)  the content of an offender's child pornography collection and the nature of an offender's collecting behavior (in terms of volume, the types of sexual conduct depicted in the images, the ages of the victims depicted, and the extent to which an offender has organized, maintained and protected his collection over time, including through the use of sophisticated technology);

  2)  the degree of an offender's engagement with other offenders - in particular, in an Internet "community" devoted to child pornography and child sexual exploitation; and

  3)  whether an offender has a history of engaging in sexually abusive, exploitative, or predatory conduct in addition to his child pornography offense."

*Report,* p. 320.

The Commission also noted that:

  [t]he presence of aggravating factors from any of these three categories, even without the presence of any aggravating factors from the other two categories, warrants enhanced punishment depending on the degree that aggravating factors from that category are present in a particular case. The presence of aggravating factors from multiple categories generally would warrant a more severe penalty than the presence of aggravating factors from a single category.

3

*Report,* p. 321.

The Commission explained that its first recommended area of amendment was intended to "account more meaningfully for the current spectrum of offense behavior regarding the nature of images, the volume of images and other aspects of an offender's collecting behavior reflecting his culpability (*e.g.* the extent to which an offender catalogued his child pornography collection by topics such as age, gender, or type of sexual activity depicted; the duration of an offender's collecting behavior; the number of unique, as opposed to duplicate, images possessed by an offender)." *Id.* at 323.

A revision to the guideline with regard to the nature, volume, and level of organization of the images and videos would accentuate, rather than diminish, the defendant's criminal behavior. The defendant possessed at least 597 images and 43 videos depicting child pornography. (For conversion purposes each video is considered to be equivalent of 75 images, thus the defendant had over 3,000 images). Presumably any revision reflecting the volume of a collection would include at least some kind of enhancement for that number of images. The defendant also had used the Freenet program to receive these images from the internet. Freenet is a more complicated, less known about peer-to-peer program, that is often used to trade child pornography. The defendant's IP address was seen by law enforcement on Freenet requesting child pornography *five* separate times.

Regarding the nature of the collection, he also possessed material depicting the sadistic and masochistic abuse of children. It can give the Court no comfort that the defendant possessed images depicting children images of prepubescent children being vaginally and anally penetrated. The defendant possessed child pornography images depicting children as young as

4

infants and toddlers being raped.  Presumably, any revision reflecting violence and/or young victims would significantly increase the current two level increase for prepubescent depictions.

## B.     Supervised Release Conditions

Defendant has objected to the special conditions of supervised release that prohibit him from possessing or using a computer or smartphone, or accessing the internet without the written approval of the probation office.  He additionally objected to the special condition prohibiting him from contact with minors without the permission of the probation office.  The government believes both conditions should be ordered.

The government believes that the requests to modify the conditions of supervised release as they are set out in the PSR is premature. The government believes that after the defendant has spent some time on supervise release, complying with all of the conditions of supervised release, he should then request a modification.

A court may "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release." 18 U.S.C. § 3583(e)(2) *see also United States v. Yankton*, 168 F.3d 1096, 1098 n. 6 (8th Cir.1999). The text of the statute requires courts to consider "factors set forth in § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(4), (a)(5), (a)(6) and (a)(7)" before modifying a term of supervised release. *See* 18 U.S.C. § 3583(e). Courts in this circuit have construed this language to limit their analysis. "[W]hen considering whether to 'modify, reduce, or enlarge the conditions of supervision,' a court is limited to considering the sentencing factors enumerated in § 3553(a), any applicable Federal Rules of Criminal Procedure, and applicable provisions for setting the initial conditions of supervised release." *United States v.*

*Romig*, 00-cr-355 (JRT) 2014 WL 1048390 at *1 (D. Minn 2014), quoting *United States v. Shipley*, 825 F. Supp. 2d 984, 988 (S.D. Iowa 2011) (internal quotation marks omitted).

The Eighth Circuit has not directly addressed whether a district court may consider the illegality or unconstitutionality of a condition in determining whether modification is appropriate.

First, the defendant is alleging that the condition of supervised release that requires him to obtain prior approval of a probation officer before using an internet capable computer or device (including a smart phone) is a greater deprivation of liberty than reasonable necessary to meet section 3582(d) criteria.  The defendant did use a computer and the internet to download child pornography.  Therefore, imposing a supervised release condition restricting a defendant's computer, internet, and smart phone use is not unreasonable. See United States vs. *Deatherage*, 682 F.3d 755 (8th Cir. 2012).[3]

"A district court has broad discretion to impose special conditions of supervised release, so long as each condition complies with the requirements set forth in 18 U.S.C. § 3583(d)." *United States v. Springston*, 650 F.3d 1153, 1155 (8th Cir. 2011). "Under § 3583(d), a district court may impose special conditions of supervised release if the conditions are reasonably related to the sentencing factors set forth in § 3553(a), involve no greater deprivation of liberty than is reasonably necessary for the purposes set forth in § 3553(a), and are consistent with any pertinent policy statements issued by the Sentencing Commission."  *U.S. v. Morais*, 670 F.3d 889, 895 (8th Cir.

---

[3] Also see the following cases upholding a special condition of restricted or monitored computer usage and internet access. *See United States v. Morais,* 670 F.3d 889, 895–97 (8th Cir.2012); *United States v. Mayo,* 642 F.3d 628, 632–33 (8th Cir.2011); *Stults,* 575 F.3d at 850, 855–56; *Bender,* 566 F.3d at 750–52; *Boston,* 494 F.3d at 668; *Ristine,* 335 F.3d at 696.

2012).

The limitations on defendant's use of the internet through a computer, smart phone or other means are reasonably related to the sentencing factors set forth in Section 3553(a), including the nature and circumstances of the offense, the need to afford adequate deterrence to criminal conduct, and the need to protect the public from further crimes of the defendant.  Defendant obtained over three thousand images of child pornography over the internet and used Freenet, a peer-to-peer file sharing software that facilitates the distribution of child pornography. The condition is consistent with the policy statements contained in Sentencing Guidelines Section 5D1.3(d)(7) that a condition limiting the use of a computer or interactive computer service be imposed in cases in which the defendant used such items.  It does not involve a greater deprivation of liberty than is reasonably necessary.  Defendant is permitted to use the internet with the prior approval of the probation officer.  He is not banned from ever using the internet. Such limitations on internet usage have been repeatedly upheld.  *United States v. Goettsch,* 812 F.3d 1169, 1171 (8th Cir. 2016); *United States v. Black,* 670 F.3d 877, 883 (8th Cir. 2012); *United States v. Durham*, 618 F.3d 921, 944-945 (8th Cir. 2010).  The Court should deny defendant's objection to the special condition restricting internet use.  Further, defendant attempts to portray that he was alone on the internet receiving child pornography. That is not true. Defendant used a peer-to-peer network to find and receive these images of child pornography. By its very nature, "peer-to-peer," the program requires the user to communicate and rely on other people on that program on the internet to receive the child pornography.

Defendant also objects to the special condition prohibiting his contact with minors without the approval of the probation officer because he wishes to have unsupervised contact

with his nieces.  According to the PSR and the affidavits of John and Michelle Dickerman, the defendant has two nieces, aged three years and three months.  It appears from the affidavits that they live in Washington, D.C. Nowhere in the affidavits does it explain why these children need to be unsupervised with the defendant.  The defendant lives in St. Louis, Missouri and is not a caretaker of the children.  Getting prior approval before unsupervised visits with the young children seems to be a very small inconvenience to the family.  However, getting prior approval, gives the very young children some protections from a man who possessed child pornography of children as young as infants.   Moreover, the Court has regularly affirmed restrictions on contact with minors for defendants who were convicted of possession or receipt of child pornography. *United v. Koch,* 625 F.3d 470, 481 (8th Cir. 2010); *United States v. Mark*, 425 F.3d 505, 507–08 (8th Cir. 2005).

### Conclusion

In summary, the Government objects to the severe downward variance requested by the defendant. The defendant knowingly possessed more than three thousand images (3,000) of child pornography.  These images in the defendant's collection depict horrific child sexual abuse of real children.  The children in these images and videos are all too real. Several of them have submitted restitution requests.   Just look to their filed victim impact statements associated with their requests to see how "just looking at" these images affects these victims forever.  As "Vicky" states in her impact statement, "I am a victim of the worst kind of exploitation: child porn. Unlike other forms of exploitation, this one is never ending.  Everyday, people are trading and sharing videos of me as a little girl being raped in the most sadistic ways. They don't know me, but they have seen every part of me.  They are being entertained by my shame and pain."

The Government is requesting that the Court sentence the defendant to sixty-three (63) to seventy-eight (78) months in prison, followed by lifetime supervised release.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

*s/ Colleen C. Lang*
COLLEEN C. LANG, #56872MO
Assistant United States Attorney
111 S. 10th Street, Room 20.333
St. Louis, Missouri 63l02
(314) 539-2200

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2018, the foregoing was filed electronically with the Clerk of the Court to be served by email upon the following:

ADAM FEIN
Attorney for the Defendant

*s/ Colleen C. Lang*
COLLEEN C. LANG, #56872MO
Assistant United States Attorney